UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 02 3163

MARIETTA SMALL, Public Administrator of Kings County, As Administratrix of the Estate of ANDY M. HERRERA, MARIA DelCARMEN HERRERA, and as Intended Administratrix of the Estate of RICARDO NICANOL HERRERA,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE POLICE BENEVOLENT ASSOCIATION, JOSEPH GRAY, KEITH SINGER, DENNIS HEALY, THOMAS DePRISCO, ROY RICHTER, RICKY KARPEN, BRIAN WHITE, PETER MOY, MARTIN FINKELSTEIN, DAVID GASKIN, THE WILD WILD WEST INC., and MICHAEL IMMITT,

Defendants.

**VERIFIED COMPLAINT**

GERSHON, J.

**TRIAL BY JURY DEMANDED**

AZRACK, J.

CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
2002 MAY 30 A 10: 44

Plaintiff, by her attorneys, LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C., complaining of the defendants, states the following upon information and belief:

## JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988; and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York. Jurisdiction is founded upon 28 U.S. C. §§ 1331, 1343(1-4), and 2202. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district under 28 U.S.C. § 1391(b).

## NOTICE OF CLAIM

3. On or about August 16, 2001 a Notice of Claim was duly served upon THE CITY OF NEW YORK.

4. On or about December 4, 2001, an Amended Notice of Claim was duly served upon THE CITY OF NEW YORK.

5. Said claims were presented within ninety (90) days after the cause of action herein accrued or within ninety (90) days after appointment of a legal representative for the Estate.

6. More than thirty (30) days have elapsed since such presentation of said claims, and defendant has neglected and failed to make adjustment or payment thereon.

7. On January 29, 2002, a hearing was held pursuant to §50-h of the General Municipal Law.

8. This action is being commenced within one year and ninety days of the date the cause of action arose.

9. Plaintiff has complied all conditions precedent for the commencement of this action.

## FACTUAL ALLEGATIONS

### A. PLAINTIFFS

10. VICTOR HERRERA was the husband of MARIA DelCARMEN HERRERA, and the father and natural guardian of ANDY M. HERRERA and RICARDO NICANOL HERRERA.

11. Plaintiff MARIETTA SMALL was and is the Kings County Public Administrator pursuant to the laws of the State of New York.

12. On October 26, 2001, the Kings County Surrogate Court granted temporary Letters of Administration to MARIETTA SMALL, on behalf of the Estate of MARIA DelCARMEN HERRERA.

13. MARIA DelCARMEN HERRERA was 8 ½ months pregnant at the time of the occurrence.

14. Following the occurrence, their son RICARDO NICANOL HERRERA was born by ceasarian section, alive, and survived several hours, before dying.

## B. DEFENDANTS

15. Defendant THE CITY OF NEW YORK ("CITY") was and is a municipal corporation duly organized and existing under and pursuant to the Laws of the State of New York.

16. Defendant, the Patrolmen's Benevolent Association of the City of New York (PBA), is the union representing approximately 30,000 New York City police officers.

17. In addition to the customs, policies, and practices discussed herein, the relationship between the PBA and its members on one hand and the City on the other is governed by a collective bargaining agreement and by rules and regulations set forth in a document known as the "Patrol Guide."

18. In addition to the facts alleged in the following subparagraphs, the following defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of the statutes,

ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York:

(a) Defendant JOSEPH GRAY, at all relevant times, was a police officer employed by the defendant City of New York;

(b) Defendant KEITH SINGER, at all relevant times, was a police officer employed by the defendant City of New York and held the rank of sergeant;

(c) Defendant DENNIS HEALEY at all relevant times, was a police officer employed by the defendant City of New York and held the rank of sergeant;

(d) Defendant THOMAS F. DEPRISCO, at all relevant times, was a police officer employed by the defendant City of New York; and held the rank of captain;

(e) Defendant ROY RICHTER, at all relevant times, was a police officer employed by the defendant City of New York; and held the rank of captain;

(f) Defendant MICHAEL IMMITT, at all relevant times, was a police officer employed by the defendant City of New York and an agent of the PBA, acting under its directives;

(g) Defendant MICHAEL ZARRLLI at all relevant times, was a police officer employed by the defendant City of New York and held the rank of sergeant;

(h) Defendant PETER MOY at all relevant times, was a police officer employed by the defendant City of New York and held the rank of sergeant;

(i) Defendant JOSEPH GALLO, at all relevant times, was a police officer employed by the defendant City of New York and an agent of the PBA, acting under its directives;

(j) Defendant MARTIN FINKELSTEIN, at all relevant times, was a police officer employed by the defendant City of New York and was assigned to the Accident Investigation Squad;

(k) Defendant VINCENT FIORENZA, at all relevant times, was a police officer employed by the defendant City of New York and was assigned to the Accident Investigation Squad.

(l) Defendant RICKY KARPEN, at all relevant times, was a police officer employed by the defendant City of New York and held the rank of Lieutenant and was the 72nd Precinct Integrity Control Officer.

19. THE WILD WILD WEST, INC., is a topless bar and strip club, located at 3901 Second Avenue, Brooklyn, New York, that is licensed to sell alcoholic beverages.

## FACTUAL AND GENERAL ALLEGATIONS

## C. FACTS

20. GRAY worked a tour of duty as a patrolman at the 72nd Precinct on August 4, 2001 from approximately midnight to 8:00 A.M.

21. Immediately following this tour of duty, GRAY consumed alcoholic beverages in the 72nd Precinct parking lot.

22. On August 4, 2001, GRAY consumed alcoholic beverages in the 72nd Precinct parking lot in the presence of, participating with and in concert with other police officers, sergeants and police department supervisory personnel.

23. On August 4, 2001, GRAY consumed alcoholic beverages in the 72nd Precinct parking lot with the knowledge of other police officers, sergeants and other police department supervisory personnel.

24. Prior to August 4, 2001, GRAY consumed alcoholic beverages in the 72nd Precinct parking lot with the knowledge of other police officers, sergeants and other police department supervisory personnel.

25. Prior to August 4, 2001, GRAY and other police officers, including supervisors, had consumed alcoholic beverages in the 72nd Precinct parking lot with the permission and consent of the defendant City of New York.

26. Although it was a violation of the City's Administrative Code and Police Department regulations, prior to August 4, 2001, GRAY consumed alcoholic beverages in the 72nd Precinct parking lot with the permission and consent of other police officers, sergeants and other police department supervisory personnel.

27. The consumption of alcoholic beverages in the 72nd Precinct parking lot, under color of law, with the knowledge, permission and consent of the defendant City of New York by Officer GRAY and other police officers, including supervisors, evidenced a wanton and callous disregard for the public safety and the civil rights of other persons.

28. Following his tour of duty, GRAY embarked on an alcoholic drinking binge that began in the 72nd Precinct parking lot.

29. Following his tour of duty, GRAY embarked on an alcoholic drinking binge that took place in the 72nd Precinct parking lot for a period of 4 to 5 hours.

30. The drinking binge continued shortly thereafter at the WILD WILD WEST, INC. , which was officially off-limits to New York City Police officers.

31. The drinking binge at the WILD WILD WEST, INC., continued all day long, and was aided, abetted and done in concert with other New York City Police officers, including supervisory personnel, including Sgt. Dennis Healy.

32. GRAY drank alcohol on a continuous basis during period of time while at the WILD WILD WEST INC., consuming between 12 and 18 beers.

33. When GRAY left the WILD WILD WEST INC., shortly after 7:30 p.m., he had not slept in over 22 hours, was visibly and legally intoxicated from drinking alcohol continuously during a 12 hour drinking binge, and was attempting to drive back to the 72nd Precinct to begin yet another tour of duty as a police officer.

34. The 12-hour drinking binge of alcoholic beverages with the knowledge, permission and consent of the defendant City of New York, under color of law by Officer GRAY and other police officers, including supervisors, evidenced a wanton and callous disregard for the public safety and the civil rights of other persons.

35. While operating his motor vehicle while legally intoxicated from drinking alcohol with the knowledge and permission of the defendant City of New York, Officer Gray struck and killed MARIA DelCARMEN HERRERA and her son ANDY M. HERRERA and her newborn son RICARDO NICANOL HERRERA and her sister, Dilcia Pena.

36. The conspiracy by the defendants to cover up the drinking and misconduct of Officer Joseph Gray began as he soon as he was identified as the driver of the vehicle that struck plaintiff's decedents.

37. Under color of law, the defendants engaged in a conspiracy to cover up the drinking and misconduct of Officer Joseph Gray began when Gray was identified as the driver of the vehicle that struck plaintiff's decedents.

38. The Patrolmen's Benevolent Association ("PBA") became involved in the conspiracy to cover-up Police Officers Gray's' misconduct. Consistent with its regular practice in cases of misconduct by police officers, the PBA and its agents -- police officers themselves – acted affirmatively to hinder the investigation and prosecution of Officer Gray.

39. The policies, customs, and practices of the PBA and the City have promoted an atmosphere in which police officers feel assured that evidence of misdeeds depriving citizens of their civil rights, will be hidden by PBA representatives and the "code of silence," where dishonesty goes unpunished and honesty is actively discouraged. With the imposition of punitive damages against all defendants with the exception of the City and of appropriate equitable relief, plaintiffs hope to deter defendants and bring an end to this misconduct.

40. On May 2, 2002, a jury deliberating an Kings County Supreme Court, found GRAY guilty of four counts of second degree manslaughter, for recklessly causing the deaths of MARIA DelCARMEN HERRERA, ANDY M. HERRERA and RICARDO NICANOL HERRERA, and was found guilty of driving while intoxicated.

41. The actions of all individual defendants were performed within the scope of their employment and authority, for whose acts the defendants City and PBA are liable under the doctrine of *respondeat superior*.

42. The actions of the defendant officers violated Plaintiff Decedent's clearly established rights under the Fourteenth Amendment of the Constitution.

43. The actions of all defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to all defendants with the exception of the municipality.

COUNT 1

42 U.S.C. § 1983 CLAIM - PERMITTING

THE CONSUMPTION OF ALCOHOL

BY POLICE OFFICERS

44. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

45. Defendant City of New York and the supervising officers of the 72nd Precinct permitted and allowed Officer Gray to consume alcohol beverages while at the 72 Precinct parking lot in Kings County, Brooklyn, New York.

46. Defendant City of New York and the supervising officers of the 72nd Precinct permitted and allowed Officer Gray to consume alcohol beverages while at the a topless bar, WILD WILD WEST, INC in Brooklyn, New York, although the aforesaid bar was officially off limits to Police Officers.

47. Defendant City of New York and the supervising officers of the 72nd Precinct routinely permitted and allowed the consumption of alcohol beverages by police officers, including defendant Gray, on a regular basis both on the precinct property, the precinct parking lot and at the off-limits topless bar.

48. Defendant City of New York and the supervising officers of the 72nd Precinct policy of routinely permitted and allowed the consumption of alcohol beverages by police officers, including defendant Gray, on a regular basis both at the precinct parking lot and at the off-limits topless bar, evidenced a disregard for the life and civil rights of the members of the community, including but not limited to plaintiff's decedents.

49. The comsumption of alcoholic beverages in said precinct parking lot was and is a violation of the NeW York City Administrative Code, Title 10, Chapter 1, Public Safety Section 10-125, punishable by a fine or imprisonment, or both.

## COUNT 2

## 42 U.S.C. § 1983 CLAIM - PERMITTING THE COVER-UP BY POLICE OFFICERS

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

51. Following the tragic occurrence in question, the defendants, acting in their official capacity, individually, engaged in actions to obstruct justice and deprive plaintiffs of their civil rights:

(a) by failing to properly record and/or conceal evidence of GRAY's criminal conduct;

(b) by failing to record and/or conceal evidence to make it more difficult to prosecute GRAY for his criminal conduct;

(c) by failing to timely and appropriately record and/or document GRAY's blood alcohol level, and

(d) by conspiring between the P.B.A., P.B.A. trustee MICHAEL IMMITT, and/or "John Gallo" and then police officer MARTIN FINKELSTEIN, to figure out which sobriety test to administer to GRAY based on which test he was most likely to "beat", with the specific intention of giving GRAY a benefit, obstructing justice.

COUNT 3

42 U.S.C. § 1983 CONSPIRACY

52. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

53. Defendants , under color of law, conspired with one another to deprive Plaintiff's decedents of their constitutional rights, including the right of life and the right to criminal and civil justice.

54. In furtherance of the conspiracy and to exculpate and cover up the misconduct of Officer Gray and the other police officers and supervisors, defendants, in their official capacity, and acting in concert, engaged in the conduct hereinabove described.

COUNT 4

42 U.S.C. § 1983 EQUAL PROTECTION OF THE LAWS

55. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

56. The individual defendants conspired with each other and with the PBA for the purpose of hindering and preventing the constituted authorities of the State of New York from securing and providing Plaintiff's decedents equal protection of the laws.

57. In furtherance of the conspiracy, and to conceal the crimes and misconduct of Police Officer Gray , all the defendants, with the exception of the municipality, engaged in a cover up.

58. Among the actions taken in furtherance were concealment of evidence and an attempt to select a sobriety test to administer to Gray based on which tests he was most likely to "beat"– aided and encouraged by defendant PBA .

59. As a proximate and direct result of defendants' conduct, plaintiff suffered the injuries and damages described below.

## COUNT 5

## 42 U.S.C. § 1985(2) CONSPIRACY TO IMPEDE DUE COURSE OF JUSTICE

60. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

61. Each of the individual defendants conspired, along with the PBA, to impede the due course of Justice in New York State, with the intent of denying plaintiff' decedents the equal protection of the laws of the United States.

62. As a proximate and direct result of defendants' conduct, plaintiff suffered the injuries and damages described herein below.

## COUNT 6

## 42 U.S.C. § 1983 SUPERVISORY LIABILITY

63. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

64. Defendants THOMAS F. DEPRISCO, ROY RICHTER, DENNIS HEALEY, MICHAEL ZARRLLI, PETER MOY, RICKY KARPEN KEITH SINGER and, at the relevant times, supervisory personnel at the 72nd precinct or in the NYPD, with oversight responsibility. They were responsible, amongst other things, for the training, instruction, supervision, and discipline of officers under their command.

65. Upon information and belief, these defendants received complaints about the conduct of Police Officer Gray and other officers in the 72th precinct, knew or should have know about past complaints, alcohol consumption, and disciplinary infractions, or, in the exercise of due diligence, should have perceived that Officer Gray and/or other officers would cause harm due to his consumption of alcohol.

66. These defendants knew, or in the exercise of due diligence would have known, that the misconduct of Police Officer Gray was likely to occur.

67. Upon information and belief these defendants failed to take preventative and remedial measures to guard against the misconduct of Officer Gray. Had they taken appropriate action, plaintiff's decedents would not have been injured and killed.

## COUNT 7

## 42 U.S.C. § 1983 - SYSTEMIC CLAIM AGAINST CITY AND PBA

68. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

69. Prior to August 4, 2001, the City, acting at the behest of and in conjunction with the PBA, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which led to and caused the violations of plaintiff's rights.

70. Upon information and belief, it was the policy and/or custom of the City to investigate inadequately and improperly police misconduct and to punish inadequately those complaints which were substantiated.

71. It was the policy and/or custom to supervise and discipline officers inadequately, including the defendant Officer Gray, thereby failing to discourage constitutional violations on the part of its police officers.

72. It was the policy and/or custom of defendants to inadequately investigate, supervise and discipline officers, including the defendant Officer Gray, thereby treating Officer Gray with special consideration after he committed the horrific crimes alleged herein; granting to Officer Gray and other police officers rights that were not granted to the public in general, thereby violating the Equal Protection Amendment to the US Constitution.

73. As a direct and proximate result of the City's and the PBA's policies, constitutional violations, and their deliberate indifference, defendants violated plaintiffs' decedent's constitutional rights for which plaintiff suffered substantial damages.

## COUNT 8

## 42 U.S.C. § 1983 CONSPIRACY BETWEEN CITY AND PBA

74. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

75. Acting jointly over a period of many years, the City and PBA together established policies and customs which allow police misconduct to cause constitutional violations by officers attempting to avoid criminal and civil liability.

76. This conspiracy between the City and the PBA is responsible for, and the proximate and direct cause of the violation of plaintiff's decedents' rights.

## COUNT 9

## PENDENT CLAIM - NEGLIGENT HIRING

77. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

78. Defendant GRAY provided information to the City of New York about his problems with alcohol and the consumption of beer prior to his hiring as a police officer.

79. Defendant City of new York was negligent in its hiring of Joseph Gray as a member of its Police Department.

80. The aforesaid negligence of the City of New York caused the damages to plaintiff described herein.

## COUNT 10

## PENDENT CLAIM - NEGLIGENT RETENTION

81. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

82. On and prior to August 4, 2001, the City of New York was aware that OFFICER GRAY consumed alcohol on a regular basis.

83. On and prior to August 4, 2001 the City of New York was aware that OFFICER GRAY consumed alcohol while on duty.

84. On and prior to August 4, 2001, the City of New York was aware that OFFICER GRAY consumed alcohol on a regular basis while off duty.

85. On and prior to August 4, 2001, the City of New York was fully aware that OFFICER GRAY consumption of alcohol while on or off duty impaired his ability to operate a motor vehicle.

86. Defendant City of New York was Negligent in its retention of Joseph Gray as a member of its Police Department.

87. The aforesaid negligence of the City of New York, in retaining Officer Gray as a Police Officer, caused the damages to plaintiff described herein.

## COUNT 11

## PENDANT CLAIM - NEGLIGENT SUPERVISION

88. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

89. On and prior to August 4, 2001, the City of New York and the other defendants knew or should have know that OFFICER GRAY had a problem with the consumption of alcohol.

90. Defendant City of New York was negligent in its supervision of Joseph Gray as a member of its Police Department.

91. The supervisors and officers of the 72nd Precinct were negligent, careless and reckless in their supervision of GRAY.

92. The aforesaid negligence of the City of New York, in supervising Officer Gray as a Police Officer, caused the damages to plaintiff described herein.

COUNT 12

PENDANT CLAIM OF WRONGFUL DEATH

93. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

94. On August 4, 2001, defendant JOSEPH GRAY owned a certain motor vehicle bearing New York license plate number X23-9DDfor the year 2001.

95. On August 4, 2001, defendant JOSEPH GRAY operated the aforementioned motor vehicle.

96. On August 4, 2001, defendant JOSEPH GRAY operated the aforementioned motor vehicle on Third Avenue, near its intersection with 46th Street, Brooklyn, New York.

97. On August 4, 2001, plaintiffs decedents MARIA DelCARMEN HERRERA and ANDY HERRERA were pedestrians lawfully at the aforementioned location.

98. At the aforementioned time and place, defendant JOSEPH GRAY struck plaintiff MARIA DelCARMEN HERRERA and ANDY HERRERA with his motor vehicle.

99. The aforementioned occurred as a result of the negligence, carelessness and recklessness of the defendant JOSEPH GRAY in the ownership, operation, management and control of his motor vehicle.

100. Plaintiffs decedents MARIA DelCARMEN HERRERA and ANDY HERRERA were injured.

101. Plaintiffs decedents MARIA DelCARMEN HERRERA and ANDY HERRERA were seriously injured.

102. Following the occurrence, MARIA DELCARMEN HERRERA gave birth to RICARDO NICANOL HERRERA.

103. Plaintiff's decedents, MARIA DelCARMEN HERRERA, ANDY HERRERA and RICARDO NICANOL HERRERA, suffered conscious pain and suffering prior to their death.

104. By reason of the foregoing, plaintiff has sustained a serious injury as defined in Section 5102(d) of the Insurance Law and/or economic loss greater than basic economic loss as defined in Section 5102(a) of the Insurance Law of the State of New York

105. The limitations on liability set forth in CPLR Section 1601 do not apply to this action.

106. The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR Section 1602, including, but not limited to, Section 1602(6), Section 1602 (7) and Section 1602(5).

107. By reason of the negligence of the defendant Gray, plaintiff's decedents, sustained injuries which resulted in the death of MARIA DelCARMEN HERRERA, ANDY HERRERA and RICARDO NICANOL HERRERA.

108. By reason of the negligence of the defendant, plaintiff suffered the wrongful death of MARIA DelCARMEN HERRERA and ANDY HERRERA, pecuniary losses to his estate and his distributees, funeral expenses and other damages.

## COUNT 14

## PENDANT CLAIM OF DRAM SHOP VIOLATION

## CAUSING WRONGFUL DEATH

109. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

110. The WILD WILD WEST INC., violated §11-100 and §11-101, also known as the Dram Shop Act by serving alcoholic beverages to defendant GRAY, who was visibly intoxicated.

111. Plaintiffs decedents MARIA DelCARMEN HERRERA and ANDY HERRERA were injured.

112. Plaintiffs decedents MARIA DelCARMEN HERRERA and ANDY HERRERA were seriously injured.

113. Plaintiff's decedents, MARIA DelCARMEN HERRERA, ANDY HERRERA, and RICARDO NICANOL HERRERA suffered conscious pain and suffering prior to their death.

114. By reason of the violation of law by defendant WILD WILD WEST INC, plaintiff's decedents, sustained injuries which resulted in the death of MARIA DelCARMEN HERRERA and ANDY HERRERA and RICARDO NICANOL HERRERA.

115. By reason of the violation of law by the defendant WILD WILD WEST

INC, plaintiff suffered the wrongful death of MARIA DelCARMEN HERRERA and ANDY HERRERA, pecuniary losses to his estate and his distributees, funeral expenses and other damages.

## COUNT 16

## PENDENT CLAIM - RESPONDENT SUPERIOR

116. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

117. At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

118. Consequently, the City is liable under the doctrine of *RESPONDENT superior* for their tortious actions.

## DAMAGES

119. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth at length herein.

120. As a direct and proximate result of the said acts of the defendants, plaintiff's decedents MARIA DeLCARMEN HERRERA, ANDY M. HERRERA RICARDO NICANOL HERRERA and VICTOR HERRERA, suffered the following injuries and damages, in an amount to be determined by the jury as fair and equitable:

(a) Violation of their rights under the Fourteenth Amendment to the Constitution;

(b) Loss of life;

(c) Serious conscious pain and suffering and wrongful death;

(d) Loss of life and loss of enjoyment of life;

(e) Wrongful death, conscious pain and suffering, pecuniary damages, loss of moral guidance, loss of homemaker's services, loss of services, and funeral and burial expenses;

(f) Damages are claimed in the amount of $100,000,000 or in an amount that the jury shall determine to be fair and equitable;

(g) As the misconduct of the defendants was so reprehensible, malicious and wanton, that an award of punitive damages is warranted in order to punish and deter future similar conduct;

Yours, etc.

LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.

By ______________________

ALAN M. SHAPEY (6199)
Attorneys for Plaintiff
40 Fulton Street, 25th Floor
New York, New York 10038
(212) 285-3300